UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALLAN DOLINSKI, LIBRADO
VASCONCELOS, RAYMOND JOHNSON and
ERIK CRESPO, Individually and on Behalf of
All Other Persons Similarly Situated,

                           Plaintiffs,

      -against-

AVANT BUSINESS SERVICE
CORPORATION, CHARLES CHIUSANO and
RICHARD RIVERA,

                           Defendants.
-----------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-28-14
```

13 Civ. 4753 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

        Plaintiffs bring wage-and-hour claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., (the "FLSA"), and the New York Labor Law on behalf of themselves and others similarly situated. Plaintiffs worked as couriers employed by defendant Avant Business Service Corporation ("Avant"). They claim that Avant and the two individual defendants violated federal and state and wage-and-hour laws by failing to pay overtime wages, refusing to reimburse mandatory work-related expenses and requiring employees to work through meal breaks without compensation. Plaintiffs assert that these pay practices were applied to couriers company-wide, and move for approval of notice as a collective action under the FLSA. (Docket # 13.) Plaintiffs do not move for certification as a class action under Rule 23, Fed. R. Civ. P., for their New York Labor Law claim.

        As more fully discussed, plaintiffs have come forward with evidence that satisfies the minimal burden required for preliminary certification as a collective action under the FLSA. Their motion is therefore granted. Plaintiffs are also directed to re-submit their proposed form of

notice to potential opt-in plaintiffs in order to clarify the eligibility of potential opt-in plaintiffs and more closely conform to the proposed collective action.

BACKGROUND.

Plaintiffs Raymond Johnson, Allan Dolinski and Librado Vasconcelos each submits a declaration that describes the defendants' allegedly unlawful practices.[1] All three plaintiffs have worked as couriers employed by Avant. (Johnson Dec. ¶ 1; Dolinski Dec. ¶ 1; Vasconcelos Dec. ¶ 1.) As couriers, their duties principally involved making deliveries by hand within New York City. (Johnson Dec. ¶¶ 3, 5; Dolinski Dec. ¶¶ 3, 5; Vasconcelos Dec. ¶¶ 3, 5.) There is no dispute that they are non-exempt employees under the FLSA.

Plaintiffs assert that defendants had in place de facto policies that violated the FLSA in three respects. First, plaintiffs contend that defendants failed to comply with the FLSA's overtime pay requirements. According to plaintiffs, they "generally worked more than 40 hours per week," and typically were not compensated at time-and-a-half rates when they worked in excess of 40 hours. (Johnson Dec. ¶ 8; Dolinski Dec. ¶¶ 7, 20; Vasconcelos Dec. ¶¶ 8, 18.) They assert that defendants did not pay them "at least minimum wage" for all hours worked. (Johnson Dec. ¶ 14; Dolinski Dec. ¶ 20; Vasconcelos Dec. ¶ 18.) More specifically, Dolinski and Vasconcelos estimate that, on average, they were not paid "for at least 1 hour per day of work." (Dolinski Dec. ¶ 24; Vasconcelos Dec. ¶ 23.)

Second, plaintiffs contend that they were required to work through unpaid lunch breaks, even though defendants knew that couriers were "on call during meal periods" and assigned work to couriers during their meal periods. (Johnson Dec. ¶¶ 17-18; Dolinski Dec. ¶ 23; Vasconcelos Dec. ¶¶ 21-22.) According to Vasconcelos, when he complained to two

---

[1] Plaintiff Erik Crespo, who filed a consent to become a party plaintiff on July 29, 2013 (Docket # 5), has not filed a declaration.

dispatchers and defendant Richard Rivera, the operations manager for messengers and facilities at Avant, about being denied pay for work performed during meal breaks, they replied that the defendants had a policy of not paying for work performed during half-hour meal breaks. (Vasconcelos Dec. ¶¶ 16-17.)

Third, plaintiffs assert that they were required to purchase their own Metrocards and to pay $100 for company radios, both of which were required to perform work responsibilities. (Johnson Dec. ¶¶ 24-25; Dolinski Dec. ¶¶ 9-11, 30-33; Vasconcelos Dec. ¶¶ 10, 29-32.) They claim that they were provided with weekly unlimited Metrocards, which were deducted from their paychecks, but that they were never reimbursed for the expense. (Johnson Dec. ¶¶ 24, 26-27; Dolinski Dec. ¶¶ 30-33; Vasconcelos Dec. ¶¶ 29-32.)

Plaintiffs state that at any given time, the defendants employed more than 25 couriers, all of whom regularly worked more than 40 hours per week without receiving the minimum wage required by the FLSA. (Johnson Dec. ¶¶ 3, 30-36; Dolinski Dec. ¶¶ 3, 36-42; Vasconcelos Dec. ¶¶ 3, 35-41.) Dolinski asserts that between 2010 and 2012, he complained that he was not being paid the required compensation and had not been reimbursed for Metrocard expenses; he also states that he filed a complaint with the New York Department of Labor in the fall of 2011. (Dolinski Dec. ¶¶ 16-19.) Vasconcelos also states that he complained to certain dispatchers that he was not being fully compensated, after which he "sometimes was paid for some of the hours which I had sought but was never paid for all my hours worked." (Vasconcelos Dec. ¶¶ 16-17.) Vasconcelos states that when he raised the issue with defendant Rivera, he responded that defendants "had a policy not to pay for Metrocards and not to pay for work performed during the meal break." (Vasconcelos Dec. ¶ 17.)

In opposing the plaintiffs' motion for preliminary certification, the defendants assert that Avant tracks employee hours using a variety of technologies, including software programs and fingerprint scans. (Rivera Aff. ¶¶ 9, 11-13; Eichenbaum Aff. ¶¶ 7-8.) Prior to 2011, Avant tracked employee hours using hard-copy time sheets. (Rivera Aff. ¶ 23.) Defendants also assert that Avant has a policy to reimburse employees for work-related expenses (Rivera Aff. ¶¶ 37-41; Eichenbaum Aff. ¶¶ 15-19), has a policy that provides for employee meal breaks (Rivera Aff. ¶¶ 16-19 & Ex. B) and that Avant provides written guidelines on wage-and-hour laws for all new couriers. (Rivera Aff. ¶ 14 & Ex. B.)

STANDARD FOR PRELIMINARY CERTIFICATION AS A COLLECTIVE ACTION

The text of the FLSA provides a mechanism by which similarly situated employees may opt into a collective action:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). District courts have discretion to implement section 216(b) "'by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)). "In a collective action under FLSA – unlike in a class action under Federal Rule of Civil Procedure 23 – only plaintiffs who affirmatively opt in to the case can benefit from the judgment or be bound by it." Damassia v. Duane Reade, Inc., 2006 WL 2853971, *2 (S.D.N.Y. Oct 5, 2006) (Lynch, J.). Although orders facilitating notice are often referred to as orders "certifying" a collective action, the FLSA does not contain a certification provision. Id. "Certification" is simply "the district

court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members." Myers, 624 F.3d at 555 n.10.

In determining whether to exercise its discretion to send notice to potential opt-in plaintiffs, courts in this Circuit conduct a two-phase inquiry. Id. at 554–55 (reviewing the two-phase inquiry and deeming it "sensible" for evaluating certification under section 216(b)); see also Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367–68 (S.D.N.Y. 2007). In the first phase, the court makes a preliminary determination as to whether potential opt-in plaintiffs are "similarly situated" to the named plaintiffs. See Myers, 624 F.3d at 555; Damassia, 2006 WL 2853971 at *3. Plaintiffs' burden at this initial stage is "minimal," id., requiring only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id. (emphasis in original; quotation marks and internal citation omitted). No showing of numerosity, typicality, commonality and representativeness is required. See Lynch, 491 F. Supp 2d at 369; Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The 'similarly situated' standard . . . is thus considerably more liberal than class certification under Rule 23.") (quotation marks omitted).

If the plaintiffs meet their burden, the court conditionally certifies the collective action and authorizes the plaintiffs to send notice to potential collective action members. See id. at 368. Court-authorized notice is preferred because "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed" and because such

notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). After receiving the court-approved notice, potential members may elect to opt in by filing consent forms with the Court. See Lynch, 491 F. Supp. 2d at 368.

After discovery, typically on the defendant's motion for decertification, courts engage in the second phase of analysis. See id.; Iglesias-Mendoza, 239 F.R.D. at 367. During the second stage, the court determines on a full record, and under a more stringent standard, whether the additional plaintiffs are, in fact, similarly situated. See Damassia, 2006 WL 2853971 at *3. If the court concludes that all plaintiffs are similarly situated, the collective action proceeds to trial; otherwise, the collective action is decertified and the claims of the opt-in plaintiffs are dismissed without prejudice. See Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

DISCUSSION

> I. Plaintiffs Have Come Forward With Some Evidence of a Common Policy as to Their Wage and Hour Claims.

The FLSA requires an employer to pay non-exempt employees time-and-a-half wages if they work more than forty hours per week. 29 U.S.C. § 207(a); 29 C.F.R. § 778.315. It requires a minimum wage for each hour worked. 29 U.S.C. § 206(a). An FLSA implementing regulation separately requires an employee to be paid for meal breaks unless that employee is "completely relieved from duty." 29 C.F.R. § 553.223.

Plaintiffs have come forward with evidence to support their claim that the defendants have a common policy not to pay for all hours worked or for overtime hours accrued by couriers. Specifically, the declarations of plaintiffs Dolinski, Vasconcelos and Johnson describe an ongoing practice wherein the defendants refused to compensate them at time-and-a-

half rates when they worked in excess of forty hours per week. (Johnson Dec. ¶ 8; Dolinski Dec. ¶¶ 7, 20; Vasconcelos Dec. ¶ 8.) Each alleges that the defendants properly paid them minimum wage for those hours that they were credited with working, but that there the defendants had a practice of not crediting them for all hours actually worked. (Johnson Dec. ¶¶ 20, 32; Dolinski Dec. ¶ 26; Vasconcelos Dec. ¶¶ 24-25, 37.) Dolinski states that he complained to defendant Richard Rivera in 2010 and 2011 about not being paid for all hours worked and for not being paid overtime; Rivera said he would look into the matter but thereafter failed to address the complaint. (Dolinski Dec. ¶ 16.) Vasconcelos also states that he complained to Rivera about not being paid for all hours worked. (Vasconcelos Dec. ¶ 17.) Dolinski raised the same complaint to a dispatcher identified as Dre. (Dolinski Dec. ¶¶ 17-18.)

The declarants also state that they have personal knowledge of other non-party couriers who were subject to defendants' alleged practice of not paying overtime wages or for all hours worked. Vasconcelos states that a co-worker named Frankie, whose last name is unknown, had similar complaints. (Vasconcelos Dec. ¶ 39.) Dolinski states that he had conversations with employees identified as "Marvin" and "Smalls," who both stated that they were not compensated for all hours worked and were not paid overtime wages. (Dolinski Dec. ¶ 40.) Johnson states that, in addition to having discussed defendant's pay practices with plaintiffs Crespo and Vasconcelos, a non-party courier named Thomas Atchison complained about not receiving compensation for all hours worked or for overtime. (Johnson Dec. ¶ 34.)

The declarations of plaintiffs Johnson, Dolinski and Vasconcelos satisfy the Second Circuit's requirement of a "modest factual showing" going toward the existence of similarly situated plaintiffs. Myers, 624 F.3d at 555. Each describes a de facto practice not to pay overtime, and a practice to pay couriers the minimum wage for credited hours while not

- 7 -

crediting them for all hours worked. They also have identified other couriers who have stated that they were subject to the same policy. While defendants vigorously dispute plaintiffs' claims and assert that they lawfully compensated couriers and informed them of applicable wage-and-hour laws (see, e.g., Rivera Aff. ¶¶ 7-11, 14-17, 23-26 & Ex. B), a motion for preliminary certification as a collective action does not resolve the case on the merits. Moreover, other courts in this District have granted motions for preliminary certification when plaintiffs have come forward with some evidence that an employer's de facto policies violate the FLSA. See, e.g., Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 405-06 (S.D.N.Y. 2012) (Koeltl, J.) (reviewing evidence of employer conduct that "resulted, in practice, in a pattern of FLSA violations"); Chhab v. Darden Restaurants, Inc., 2013 WL 5308004, at *14 (S.D.N.Y. Sept. 20, 2013) (Buchwald, J.) (plaintiffs made some showing that employer policies "led to common deviations which resulted in FLSA violations.").

In addition, plaintiffs also have come forward with some evidence that, under a common policy, similarly situated employees were denied full compensation for work performed during their designated meal breaks. They state that they were not paid for meal breaks, even though they were kept on call and received assignments during meal breaks. (Johnson Dec. ¶¶ 17-18; Dolinski Dec. ¶¶ 22-23; Vasconcelos Dec. ¶ 22.) Vasconcelos states that when he complained to dispatchers identified as "Dre" and "Angel" that he was not being paid for work during half-hour meal breaks, they responded that defendants have a policy not to pay for work performed at meal breaks. (Vasconcelos Dec. ¶ 16.) Vasconcelos also states that when he complained to Rivera about not being paid for work performed at meal breaks, Rivera also stated that defendants had a policy against doing so. (Vasconcelos Dec. ¶ 17.)

Plaintiffs' assertions that defendants had a common practice not to pay couriers for work performed during meal breaks, and the assertion by Vasconcelos that he was expressly told as much by three members of management, are sufficient to grant preliminary certification on plaintiffs' claims going toward compensation at meal breaks.

>  II. Plaintiffs Have Come Forward with Evidence of a Common Policy as to the Alleged Failure to Reimburse Mandatory Work Expenses.

Separately, plaintiffs assert in sufficient detail that the defendants maintained a common policy of unlawfully refusing to reimburse employees for necessary workplace-related expenses. FLSA implementing regulations forbid employers from requiring employees to pay for "tools of the trade" and costs borne "primarily for the benefit or convenience of the employer," if such expenses bring employee wages below the federal minimum wage. See 29 C.F.R. §§ 531.32(c), 531.35; see also Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 511-13 (S.D.N.Y. 2010) (Marrero, J.) (summarizing "tools of the trade" regulation).

Plaintiffs assert that they were required to pay $100 for company radios that were necessary to carry out work assignments, and that defendants did not reimburse them for the required purchase of Metrocards. (Johnson Dec. ¶¶ 24-25; Dolinski Dec. ¶¶ 9-11, 30-33; Vasconcelos Dec. ¶¶ 10, 29-32.) They also offer evidence of salary deductions to pay for Metrocards. (See, e.g., Johnson Dec. Ex. A.) According to the defendants, these assertions are baseless because, since May 2012, Avant has provided employees with iPhones. (Rivera Dec. ¶ 29.) They assert that for fifteen years, Avant has given employees the option to purchase tax-exempt monthly Metrocards, which currently are discounted to $89.76 from their face value of $112. (Rivera Dec. ¶¶ 37-41.) However, even accepting the truth of defendants' factual assertions, they do not contradict plaintiffs' claims that Avant does not reimburse them for

Metrocard purchases that were required to perform their jobs, and that they also were required to purchase radios for use in their employment.

Plaintiffs have come forward with evidence that defendants had a common policy of failing to reimburse plaintiffs for expenses required to perform their work responsibilities. Their motion for preliminary certification is therefore granted as to the alleged mandatory radio and Metrocard purchases.

### III. Plaintiffs' Proposed Form of Notice.

Plaintiffs are directed to revise certain portions of the proposed notice in light of the objections raised by defendants.

The proposed notice states that plaintiffs seek to bring claims on behalf of current and former Avant employees "who worked as couriers or in other similar non-managerial, non administrative positions on or after July 10, 2007." (Rand Dec. Ex. A.) Plaintiffs maintain that this language is intended to incorporate only those employees who functioned as couriers but may have had a different job title, while defendants correctly note that this language could potentially incorporate a broader range of employees. (Reply at 4; Opp. Mem. at 15-16.) Plaintiffs should narrow this language to clarify that the collective action includes only couriers and those who perform the duties of couriers.

Defendants also note that the FLSA includes a limitations period of three years, 29 U.S.C. § 255(a), whereas plaintiffs seek the collective action notice to encompass couriers employed within the previous six years. Plaintiffs assert that a six-year period is warranted in order to facilitate discovery, given that they also assert claims under the New York Labor Law. (Pl. Mem. at 13-15.) Plaintiffs have not moved for Rule 23 certification for their New York Labor Law claims. Discovery in this case is ongoing. Plaintiffs do not persuasively explain how

expanding the collective action to a six-year period would, in this instance, facilitate discovery as to their New York Labor Law claims. They also have not come forward with evidence that supports their argument that the limitations period should be equitably tolled because plaintiffs were unaware of applicable laws, particularly given that plaintiffs state that they unsuccessfully complained to certain supervisors and the New York Department of Labor. (Dolinski Dec. ¶¶ 16-19; Vasconcelos Dec. ¶¶ 16-17.) Plaintiffs' revised form of notice therefore should be limited to those employed as couriers during the FLSA's three-year limitations period.

CONCLUSION

For the reasons explained, plaintiffs' motion for preliminary certification as a FLSA collective action is granted. The Clerk is directed to terminate the motion. (Docket # 13.)

Plaintiffs are directed to submit a revised proposed notice to potential opt-in plaintiffs within 14 days of the date of this order.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 28, 2014